Horrocks *v.* Basham.

Opinion delivered June 9, 1919.

1. WILLS—CONSTRUCTION.—Under a will directing that an estate left in trust to a son should be delivered to him when he accumulated certain estate, or in any event at a certain age, with provision for distribution of the estate in case he should die without heirs of his body surviving, and a codicil to the effect that should the son die leaving heirs of his body such heirs should inherit a fee simple, the son, upon accumulating the specified estate, took an estate in fee simple, and not merely a life estate.

2. WILLS—CONSTRUCTION.—The law favors the early vesting of estates in land.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*W. H. Pemberton,* for appellant, Parma Collette Basham.

1. The only question is the construction of the will of George L. Basham, deceased.

2. The issues here are similar to, if not identical with, the case in 115 Ark. 400, and control the case. See also 81 *Id.* 480; 104 *Id.* 445. The chancellor erred in his construction of the will, and this court should reverse and enter judgment for Parma Collette Basham.

Under the will Leftridge Basham only took a life estate in the real property and not the fee simple title. It is clear from the codicil that if Leftridge died leaving any bodily heirs such heirs would take an estate in fee simple. There is no repugnancy between the codicil and the will, but if there is a conflict the codicil will prevail. *Supra.* The codicil was added to make his intention clear.

*Sherrill, Buchanan & Mallory,* for Della B. Horrocks.

Leftriage only took a life estate under the will. This is settled by the case of 115 Ark. 400, and this leaves the second question to be settled whether the note to the Worthen bank should be canceled as a fraud on plaintiff Horrocks. Mr. Peay was acting as president of the bank in his official capacity and the bank is bound by his acts. The decree should be reversed and plaintiff Horrocks be given judgment against Leftridge Basham for $8,746.82, and interest, and the Worthen note canceled.

*Rhoton & Helm,* for appellees, Worthen & Co. and Leftridge Basham.

Construed as a whole the will, the intention was to leave a fee simple estate to Leftridge Basham. The intention should govern and every clause given effect if possible. 126 Ark. 58, and cases cited; 98 *Id.* 553; 112 *Id.* 527. The testimony shows that the intention was to

give Leftridge a fee simple estate when he accumulated
$15,000 by his own exertions or died leaving bodily heirs.
The decree is correct, and should be affirmed.

McCULLOCH, C. J.   This litigation involves a con-
struction of the last will and testament of the late George
L. Basham for the purpose of determining whether under
the terms of the will the testator's son, Leftridge Bas-
ham, took an estate in fee simple, as contended by appel-
lee, or whether he took an estate tail, which under our
statute is converted into a life estate, as contended on
behalf of appellants.   The instrument in question, omit-
ting parts not material to this controversy, reads as fol-
lows:

"All the rest and residue of my estate, real and per-
sonal, I give and devise to W. B. Worthen Company,
Robt. J. Lea, E. E. Moss; my brother, Hugh Basham,
and my son, Leftridge Basham, to hold in trust for the
purposes hereinafter set out.   It is not my purpose to
impose on my trustees, Lea, Moss and Hugh Basham,
the burden of the management of my estate but simply
to give them advisatory control.

"*First.*   My said trustees shall pay all my just debts
and funeral expenses and the legacy hereinbefore set out.

"*Second.*   They shall pay to my son Leftridge the
sum of one hundred and twenty-five dollars per month
and a further sum each month which shall equal the
amount of his earnings during that month in any voca-
tion which he may follow.   And the further sum of
twenty-five dollars per month for each child born in law-
ful wedlock while living.

"Should the exigencies of his business in the judg-
ment of my trustees justify it, they may advance to him
a reasonable sum provided the same can be done out of
the income of my estate.   Should my son by his own
efforts accumulate an estate of the value of fifteen thou-
sand dollars clear and unencumbered, or in any event
when he shall have reached the age of forty-five years,
my trustees shall turn over to him my entire estate.

"Should my son die without bodily heirs him surviving, then I will and direct that my trustees shall pay to each of the children of my four brothers and my sister the sum of one thousand dollars. Should any of my nephews or nieces die, prior to my decease, leaving a child or children, said child or children shall receive the part that would have gone to the parent if living. I further direct that they shall pay to my sister-in-law, Laura Basham, fifteen hundred dollars. All the above sums to be paid out of the income of my estate as soon as may be, should my son Leftridge so depart this life without bodily heirs him surviving. And in that event after the payment of the above legacies I hereby direct that my said trustees shall annually pay one-half of the net income of my estate each to Methodist Orphans' Home and the Florence Crittenden Home of Little Rock. Should either of these cease to exist then the whole net income shall be paid to the other.

"I hereby direct that $1,000 of my stock in the Bankers Trust Company shall be set aside by my said trustees and that the income and profits of the same shall be used for the care and preservation of my lots in Mount Holly Cemetery, Little Rock, Arkansas, and the furnishing of fresh flowers for the graves of my wife, my children and myself on natal, Easter and Christmas days."

There is an undated codicil to the will, which reads as follows:

"I desire to make it clear that should my son Leftridge (die) leaving heirs of his body, such heirs or their descendants shall inherit my estate in fee simple."

The omission of the word "die" from the codicil is a patent one. It is clear from the language of the will that the trust should come to an end when Leftridge Basham should "by his own efforts accumulate an estate of the value of fifteen thousand dollars clear and unencumbered," and in any event, when he "shall have reached the age of forty-five years." According to the testimony in the case it has been determined by the trustees that said devisee has accumulated an estate of the

value specified in the will, and they have turned the devised estate over to him.

When the whole language of the will is considered together, it is manifest that the testator used the words "should my son die without bodily heirs him surviving" with reference to the period before the time of distribution when the devised estate should be reduced to possession by delivery to the beneficiary. This, under the doctrine announced by this court in *Harrington* v. *Cooper*, 126 Ark. 53. In that case we approved a long line of decisions of the Kentucky Court of Appeals, where similar language in wills was restricted to the death of the remainderman before the termination of that estate or before the distribution of the estate or its reduction to the possession of the person to whom it is first devised.

Now, when the language of the codicil is considered in the light of what appears to be the intention of the testator expressed in the original instrument, it can not reasonably be construed as changing in anywise that intention. In fact, the language used shows that the testator had in mind his intention as expressed in the original document, and did not change the devise, but merely made clearer his intention as originally expressed. The language is not susceptible of the construction that it was intended to devise the property to heirs of the body of the first taker in any event, but merely to declare that those heirs should take the estate in fee simple, if they took at all, on the happening of the contingency specified, *i. e.,* the death of the first taker before the distribution of the estate "leaving heirs of his body." This interpretation of the will, which is not inconsistent with the language used, is induced by the well-settled canon of construction that the law favors the early vesting of estates. And the fact that the trust is ended, according to the terms of the will, when the estate is delivered to the devisee on the happening of either one of the events specified, leads unerringly to this construction, for the provision of the will concerning the disposition of the property after the death of the first taker is made by the trus-

tees during the existence of the trust.   So it is clear that no remainder over was intended, except upon the death of the first taker before he came into possession of the estate.

The decree of the chancery court was correct, and it is, therefore, affirmed.